IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Michael A. Singleton, | ) | C/A No. 2:12-2339-GRA-BHH |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **Report and Recommendation** |
| | ) | |
| Warden Eagleton, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

## I. <u>INTRODUCTION</u>

A Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 has been submitted to the Court, <u>pro</u> <u>se</u>, by a state prisoner. This matter is before the Court on Respondent's Motion for Summary Judgment (ECF No. 24) and Petitioner's Motion for Summary Judgment (ECF No. 32). Pursuant to 28 U.S.C. §636(b)(1)(B), and Local Rule 73.02(B)(2)(c) (D.S.C.), the undersigned United States Magistrate Judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

The Petition for Writ of Habeas Corpus was filed in this Court on August 15, 2012, while Petitioner was incarcerated in the Evans Correctional Institution, a part of the South Carolina Department of Corrections ("SCDC") in Bennettsville, South Carolina.[1] (ECF No. 1). On December 28, 2012, Respondent moved for Summary Judgment. (ECF No. 24). By Order dated January 2, 2013, pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir.

---

[1]  Although the Petition was filed in this Court on the date noted, Petitioner has the benefit of the "mailbox" rule. <u>Houston v. Lack</u>, 487 U.S. 266 (1988) (holding prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court).

1975), Petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (ECF No. 25). On February 6, 2013, Petitioner filed a Response in Opposition to Respondent's Motion for Summary Judgment, and Petitioner's own Motion for Summary Judgment. (ECF Nos. 31, 32). On April 2, 2013, Petitioner filed a Motion to Appoint Counsel (ECF No. 33), which was denied by Docket Text Order dated April 5, 2013 (ECF No. 33). Petitioner's Motion to Appoint Counsel included a notice of Petitioner's change of address, which advised the Court that he had been released from SCDC custody following his max-out date on April 1, 2013, and was residing in Bronx, New York. See ECF No. 33, p. 1.[2]

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner was indicted at the March 5, 2002 term of the Court of General Sessions for Charleston County for "lewd act upon a minor." ROA p. 3; ECF No. 23-5, p. 5-6. Respondent alleges that the charge arose from a series of alleged sexual batteries between March 2000 and October 2001 by sexual intercourse upon a victim who was born in March 1988 (13 years old).[3] Petitioner had been arrested on October 16, 2001. On or

---

[2] While Respondent has not addressed the effect of Petitioner's unconditional release from prison on this habeas action, the undersigned is mindful that a lack of jurisdiction based on mootness is not waivable, and may be raised by a court sua sponte at any time, because the requirements of the mootness doctrine are rooted in Article III of the Constitution. See, e.g., Liner v. Jafco, Inc., 375 U.S. 306 n.3 (1964) (stating in dictum that federal courts lack jurisdiction to hear moot cases because moot cases do not present cases or controversies); Honig v. Doe, 484 U.S. 305, 317-18 & n.5 (1988) (considering mootness argument not raised by any party but only by amicus curiae, the United States); Brooks v. Vassar, 462 F.3d 341, 348 (4th Cir. 2006). Accordingly, this Report examines the issue in Section V., below.

[3] Respondent alleges that Petitioner was the boyfriend of the victim's mother. The victim became pregnant.

2

about January 31, 2002, a child was born to the victim.  On August 14, 2002, a DNA

Parentage Report was completed concluding that Petitioner was not excluded as the father

of the child of the victim and that, based upon the results obtained from the analyses of the

DNA loci listed, the probability of his paternity was 99.999999995%.[4]  On January 16, 2003,

Petitioner entered a guilty plea, before the Honorable A. Victor Rawl, Presiding Judge,

pursuant to a negotiated plea and sentence recommendation.  ROA p. 1; ECF No. 23-5,

p. 3.  Petitioner was represented by Kelly Kassis Solar of the Charleston County Public

Defenders Office.  Judge Rawl sentenced Petitioner to fifteen (15) years, suspended with

five (5) years probation.  Id.  No direct appeal was filed in the matter.[5]

### Probation Violation Proceedings

On June 20, 2003 a Probation violation warrant was issued for Petitioner.  In the

warrant, Petitioner was alleged to have violated probation conditions 1,2,5,7,8,9 and 10 of

his sentence.  In particular, the Department alleged:

> Subject failed to report. Subject last reported 4-7-03. Subject failed to refrain
> from leaving the state.  Per conversations with subject's uncle.  Subject left
> the state and is living in New York.  Subject failed to inform the agent of a
> new address.  Subject's uncle stated he was residing with him, meanwhile

---

[4] DNA Diagnostics Center - DNA Parentage Report - Dated August 14, 2002. (Attached as Item 9 to Respondent's Return and Memorandum of Law in Support of Motion for Summary Judgment.)  See ECF No. 23-9.

[5] Respondent asserts that, subsequent to the filing of Petitioner's § 2254 habeas petition in this case, counsel for Respondent contacted the original court reporter, Heather Burns, on November 29, 2012, and requested a copy of the transcript of Petitioner's January 15, 2003 guilty plea proceedings.  On November 30, 2012, counsel for Respondent was advised by Desiree R. Allen, Court Reporter Manager of the South Carolina Court Administration, that pursuant to SCACR 607 transcripts are not available for proceedings held prior to November 2007, based on the 5-year record retention rule. Counsel for Respondent attached a copy of these matters to Respondent's Return and Memorandum of Law in Support of Motion for Summary Judgment.  See ECF No. 23-7.

his described address was at the Stay Over Lodge on McMillan Street. Subject failed to provide employment verification. Subject stated he was working for North Area Cab. Per conversation with the dispatch, subject worked for two (2) weeks and then they had to recover their cab from subject. Subject failed to pay fine to COC (Clerk of Court). Subject failed to pay his supervision fees to state. Subject failed to follow instructions of the agent. Due to subject's lack of reporting, subject has been unable to enroll and complete a sex offender treatment program. Such actions constitute a violation of probation conditions 1,2,5,7,9, and 10 as ordered in his original probation order.

Probation Arrest Warrant, June 20, 2003; ECF No. 23-8, p. 5.

Petitioner was arrested on July 15, 2010. Supp. ROA p. 5; ECF No. 23-6, p. 5. On September 2, 2010, Petitioner was served with the probation arrest warrant. On January 31, 2011, Petitioner appeared for a probation revocation hearing before the Honorable Roger Young, Presiding Judge. Petitioner was represented by Bobby O. Phipps of the Charleston County Bar. Petitioner was alleged to have absconded from supervision in 2003 after reporting for four months. It was asserted that he had further failed to complete the special conditions of his probation including sex offender classes. Id. At the conclusion of the proceeding, Judge Young entered an order which revoked the suspended sentence and required Petitioner to serve five (5) years of his original 15 year sentence, with the additional conditions that Petitioner was to be removed from any electronic monitoring upon his release, he was to get credit for his jail time since the date he was served with warrant #0599, and, upon Petitioner's release, he was to be allowed to move back to New York. ROA p. 2; ECF No. 23-5, p. 4.

### *Probation Revocation Appeal*

Petitioner made a timely notice of appeal through counsel Phipps on February 16, 2011 of his revocation and sentence. On appeal, he was represented by Robert M. Dudek

4

of the South Carolina Office of Appellate Defense.  On January 11, 2012, counsel made

a "Final <u>Anders</u> Brief of Appellant" and petition to be relieved as counsel.[6]  In the <u>Anders</u>

brief Petitioner raised the following:

> Whether the court erred by revoking appellant's probation, without a finding
> appellant knew he was in violation of the law by not reporting, where
> appellant believed his probation was stayed by the filing of a petition for writ
> of habeas corpus in another state and federal court?

Final <u>Anders</u> Brief of Appellant, p. 3; ECF No. 23-1, p. 4.  Petitioner, <u>pro</u> <u>se</u>, had made a

response to the Initial <u>Anders</u> Brief in the Court of Appeals, in a document styled

"Questions Presented." ECF No. 23-2, p. 2-31.  On February 1, 2012, the Court of Appeals

advised Petitioner by letter that it was treating his December 29, 2011 <u>pro</u> <u>se</u> pleading as

his response to the <u>Anders</u> brief.  <u>Id</u>., p. 1.  On September 5, 2012, the South Carolina

Court of Appeals issued its unpublished opinion dismissing the appeal after consideration

of the <u>pro</u> <u>se</u> brief and review under <u>Anders</u>, and granted appellate counsel's request to be

relieved.   <u>State v. Michael Singleton</u>, Appellate Case No. 2011-185706, Unpublished

Opinion 2012-UP-512 (S.C. Ct. App. 2012); ECF No. 23-3.  The remittitur was issued on

September 21, 2012.  ECF No. 23-4.

### III. <u>APPLICABLE LAW</u>

### Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved

for summary judgment:

> The judgment sought shall be rendered forthwith if the
> pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if any, show that

---

[6]<u>See Anders v. California</u>, 386 U.S. 738 (1967).

> there is no genuine issue as to any material fact and that the
> moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. Id. at 324. Under this standard, the existence of a mere scintilla of evidence in support of the Petitioner's position is insufficient to withstand the summary judgment motion. Anderson, 477 U.S. at 252.

**Habeas Standard of Review**

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28

6

U.S.C. § 2254(d), as amended.  <u>Lindh v. Murphy</u>, 521 U.S. 320, 322-23 (1997); <u>Breard v. Pruett</u>, 134 F.3d 615, 618 (4th Cir.1998).  Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

1.    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2.    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d); <u>Williams v. Taylor</u>, 529 U.S. 362, 398 (2000).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  <u>Williams</u>, 529 U.S. at 410.  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  <u>Harrington v. Richter</u>, 131 S.Ct. 770, 786 (2011) (quoting <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)).

## IV. <u>HABEAS PETITION</u>

Petitioner raises the following four grounds: (1) "[The] federal court assumed jurisdiction over Petitioner [in] 2002, [and] the State's execution of judgment should have been stayed pending the federal judgment."  Petition, ECF No. 1, p. 5.  Petitioner alleges that he "mistook federal review for habeas corpus relief of conviction.  <u>See</u> <u>Anders</u> Brief, p. 1."  <u>Id</u>.  Petitioner further alleges that the State court "erred by revoking [Petitioner's] probation . . . without any finding [that] he was doing anything wrong, where he believed that he did not have to report because his pending cases were not challenged. Tr. p. 4" <u>Id</u>.;

7

(2) "The Petitioner is the actually innocent victim of an over 10 year conspiracy against his

civil rights." Petition, ECF No. 1, p. 7. Petitioner alleges:

> On 10-16-01 the Petitioner was arrested for a 45-year charge, held
> unindicted until 3-4-02, sentenced 1-16-03 to 5 years probation of a
> suspended 15 year charge, which was revoked 1-31-11 of 5 years prison,
> credited 657 days jail credits on a 2013 max-out.   All substantiating
> conspiracy against Negro citizen arrested and imprisoned by false reports
> that such Negro had committed criminal act DNA proved him innocent of.
> . . . Petitioner's unconditional release should be ordered when his due
> process rights violated by prosecution's intentional denial of a day in court,
> despite numerous meritorious filings for hearings, see Anders Brief pg. 7.

Id.; (3) "State court judges have alienated the Petitioner of his rights."  Petition, ECF No.

1, p. 8.  Petitioner alleges:

> A judge shall perform judicial duties without bias nor prejudice and shall not
> permit court officials to sway a judge with partisan interests, public clamor nor
> fear of criticism.   On 3 appearances before S.C. judges [Petitioner] ha[s]
> been subject to the scales of justice of being unmovably balanced in the
> prosecution's favor, holding a DNA proven innocent man guilty of an
> irreparably injuring conviction.  Pg. 5 Anders Brief.

Id.; (4) "The separation of powers have united in S.C. to hold the actually innocent

Petitioner, victim of irreparable injury, guilty though DNA proved his innocence."  Petition,

ECF No. 1, p. 10.  Petitioner alleges:

> U.S. Marshals have ordered state and federal, judicial and executive, officers
> of courts and agencies, to nullify Petitioner's checks and balances provided
> for him under state and federal constitutions.  The prosecutions shammed
> against the Petitioner's 12-26-02 - 1-16-03 conviction, is fully substantiated
> in a 7-14-10 U.S. Marshal's abduction and present false imprisonment. Over
> 10 years of suffering one arrest's Miranda conspiracy, unredressed by any
> S.C. nor N.J. 2010 place of abduction federal court.  See Anders Brief, pgs.
> 8-9, l. Denied access to state courts.

Id.

# V. <u>DISCUSSION</u>

***Petitioner's Unconditional Release From Custody On April 1, 2013***
***Moots This Habeas Petition***

As noted above, Petitioner's Motion to Appoint Counsel (ECF No. 33), filed on April 2, 2013 and denied on April 5, 2013 (ECF No. 35), included a notice of Petitioner's change of address, advising the Court that he had been released from SCDC custody following his max-out date on April 1, 2013, and was residing in Bronx, New York.  Petitioner also alleges that he remains subject to the collateral consequence of his required registration as a sex offender and his continued monitoring by the State of South Carolina.[7]  Petitioner further alleges that he "meets the exceptions to the mootness doctrine set in 804 F.2d 838, 842 (4th Cir. 1986)" because of "certain disabilities and burdens [which] flow beyond Petitioner's 4-1-13 maxout, which give him substantial stake in judgments entered against him."  Petitioner's Motion to Appoint Counsel, ECF No. 33.

The Constitution limits the jurisdiction of federal courts to actual cases or controversies.  U.S. Const. art. III, § 2; <u>Honig v. Doe</u>, 484 U.S. 305, 317 (1988).  The controversy must be present at all stages of review.  <u>Arizonans for Official English v. Arizona</u>, 520 U.S. 43, 66 (1997).  Additionally, under 28 U.S.C. § 2254(a), habeas corpus petitioners challenging their state law convictions must be "in custody" for federal courts to have jurisdiction over their petitions.[8]  <u>See</u> <u>Maleng v. Cook</u>, 490 U.S. 488, 490-92 (1989).

---

[7] <u>See</u> S.C. Code § 23-3-400, <u>et</u> <u>seq</u>.

[8] "Custody" sufficient to invoke habeas corpus jurisdiction has been found in cases where the petitioner is not physically incarcerated, for example, where the petitioner was on parole or probation, awaiting trial on bail, on military reserve status, on bond after conviction and pending execution of sentence, and involuntarily civilly

In <u>Townes v. Jarvis</u>, 577 F.3d 543 (4th Cir. 2009), the Fourth Circuit recently dealt with the doctrine of mootness in the context of a habeas petition filed after the petitioner had been found ineligible for discretionary parole, holding that, for a controversy to be moot, it must lack at least one of the three required elements of Article III standing: (1) injury in fact, (2) causation, or (3) redressability, citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992).  In discussing mootness and the satisfaction of the "in custody" statutory requirement in habeas cases, courts have held, generally, that "a case becomes moot 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'"  <u>Murphy v. Hunt</u>, 455 U.S. 478, 481 (1982) (quoting <u>United States Parole Commission v. Geraghty</u>, 445 U.S. 388, 396 (1980)).   Courts have generally recognized the evolution of two exceptions to the mootness doctrine in the context of habeas cases: (1) "collateral consequences"; and (2) "capable of repetition, yet evading review."  <u>Carafas v. LaVallee</u>, 391 U.S. 234, 237 (1968).

---

committed for mental evaluation/treatment or rehabilitation. <u>See Miller v. Blalock</u>, 356 F.2d 273 (4th Cir. 1966).  However, a petitioner's loss of employment and financial ramifications allegedly caused by civil judgments do not confer habeas jurisdiction, <u>see e.g.</u> <u>Lefkowitz v. Fair</u>, 816 F.2d 17, (1st Cir. 1987) (revocation of a medical license as a result of a rape conviction is not the type of grave restraint on liberty or sort of ongoing governmental supervision that is needed to constitute "custody"); <u>Ginsberg v. Abrams</u>, 702 F.2d 48 (2nd Cir. 1983) (petitioner's removal from bench of the family court, revocation of his license to practice law, and his disqualification from being licensed as a real estate broker or insurance agent did not so greatly limit his economic mobility as to constitution "custody" for purposes of habeas corpus); <u>Harvey v. South Dakota</u>, 526 F.2d 840 (8th Cir. 1975), cert. denied 426 U.S. 911 (1976) (inability to pursue certain professions or to possess firearms and the status of recidivist if another crime is committed do not add up to "custody"); <u>Furey v. Hyland</u>, 395 F. Supp. 1356 (D.N.J. 1975) affirmed 532 F.2d 746 (3d Cir. 1976) (potential loss of a medical license, damage to reputation, and the inability to resume public office are not "custody" in the absence if recognized restraints on liberty).

In <u>Spencer v. Kemna</u>, 523 U.S. 1 (1998), the United States Supreme Court held that a challenge to parole revocation proceedings was moot because, following the petitioner's subsequent unconditional release from prison, his habeas petition no longer presented a case or controversy under Article III, §2, of the Constitution. <u>Id</u>. at 14-16. In so finding, the Court rejected the possible risk of future apprehension and conviction as meeting any recognized exception to the mootness doctrine,[9] <u>i.e.</u> the "collateral consequences," or the "capable of repetition, yet evading review" prongs. The Court noted, "we are . . . unable to conclude that the case-or-controversy requirement is satisfied by general assertions or inferences that in the course of their activities respondents will be prosecuted for violating valid criminal laws. We assume that respondents will conduct their activities within the law." <u>Id</u>. at 15.

Recently, in <u>Wilson v. Flaherty</u>, 689 F.3d 332 (4th Cir. 2012), the Fourth Circuit held that the requirements of Virginia's sex offender registration statute did not place a habeas petitioner who had been unconditionally released "in custody." The <u>Wilson</u> Court also noted that "every court of appeals to have considered whether the registration requirements imposed on sex offenders place the sex offender in custody for purposes of habeas jurisdiction has concluded that they do not." <u>Wilson</u>, 689 F.3d at 337-38 (citing, <u>Virsnieks v. Smith</u>, 521 F.3d 707 (7th Cir.2008); <u>Leslie v. Randle</u>, 296 F.3d 518 (6th Cir.2002); <u>Henry</u>

---

[9] "[T]he capable-of-repetition [exception to the mootness] doctrine applies only in exceptional situations," <u>Los Angeles v. Lyons</u>, 461 U. S. 95, 109 (1983), "where the following two circumstances [are] simultaneously present: ' (1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again,'" <u>Lewis v. Continental Bank Corp.</u>, 494 U.S. 472, 481 (1990) (quoting <u>Murphy v. Hunt</u>, 455 U.S. 478, 482 (1982) (per curiam).

v. Lungren, 164 F.3d 1240 (9th Cir.1999); and Williamson v. Gregoire, 151 F.3d 1180 (9th Cir.1998)).

Petitioner is no longer serving the sentence imposed upon him by his probation revocation; he is no longer on probation or parole, nor is he subject to probation or parole supervision, or otherwise confined to state custody.  See ROA p. 2; ECF No. 23-5, p. 4 (probation revocation sentence requires Petitioner to serve five years, after which "subject is removed from any electronic monitoring upon his release, subject is allowed to move back to New York.").  Petitioner's argument that the requirements imposed upon him by sex offender registration satisfy the custody requirement is unavailing in light of Wilson. Following his unconditional release on April 1, 2013, Petitioner is no longer able to satisfy Article III's redressability requirement.  Because Petitioner's release has mooted this case, this Court should find that it lacks jurisdiction to consider his claim for habeas relief and dismiss his petition.

In the event the District Court prefers not to adopt a recommendation based on sua sponte review, the undersigned proceeds to examine the merits of the case.

### First Ground

In the first ground alleged, the Petitioner claims that he did not violate the terms of his probation in 2003, because the federal court had taken jurisdiction over his January 2003 lewd act conviction and sentence in a federal habeas corpus action.  He asserts that this action stayed any requirement that he had to respond to the terms of his sentence. Petitioner contends that the claim that he had absconded from probation supervision, from 2003 until 2010, was in error, because the federal court had taken jurisdiction, therefore, his probation revocation was in error.

Contrary to Petitioner's claim, the record in this case is void of the existence of any federal court stay of Petitioner's state court proceedings. This Court takes judicial notice of its prior records concerning the Petitioner.[10] Recently, in August 2011, the Court denied a petition for writ of habeas corpus challenging his 2003 lewd act conviction as time barred under 28 U.S.C. Section 2244. Singleton v. Warden, 2:11-1034-TLW-BHH (D.S.C.), Order (ECF No. 23); Text Order (ECF No. 31). This Court's judgment was affirmed by the United States Fourth Circuit Court of Appeals. C/A No. 11-1034, ECF No. 33. The undersigned has reviewed the numerous actions brought by Petitioner in this Court and in other federal courts, via the PACER system. The undersigned has found no action staying Petitioner's January 31, 2003 state court judgment, in any manner, during the time period in which Petitioner failed to report for probation, *i.e.* after April 7, 2003 (Petitioner's next report date was May 5, 2003) through June 20, 2003 (the date of the issuance of the probation violation arrest warrant), and/or through the date of the service of the warrant on Petitioner, on September 2, 2010.

To the contrary, the only actions filed in 2003-2004 after Petitioner's January 16, 2003 guilty plea conviction and probationary sentence (and prior to his absconding after April 2003) were civil rights actions against the Sheriff of Charleston County, in Singleton v. Cannon, C/A No. 8:03-0007-CWH (D.S.C.) (filed January 31, 2003), against Petitioner's public defender, in Singleton v. Kassis, et al, C/A No. 8:03-0008-CWH (D.S.C.) (filed January 28, 2003), against the Charleston County Detention Center, concerning

---

[10] See United States v. Parker, 956 F.2d 169, 171 (8th Cir. 1992) (the district court had the right to take judicial notice of a prior related proceeding); Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the content of court records.'").

Petitioner's conditions of confinement, in <u>Singleton v. Charleston County Detention Center</u>, C/A No. 8:03-00213-CWH (D.S.C.) (filed January 24, 2003) and <u>Singleton, et al  v. Charleston County Detention Center, et al</u>, C/A No. 8:03-00214 (D.S.C.) (filed January 31, 2003).  The actions that Petitioner filed from 2002 through 2003 were all ended and closed between November 2002 and April 22, 2004.  Petitioner's claim of the federal court's assumption of jurisdiction notwithstanding, he still failed to report to his probation agent, without explanation or excuse, after those civil actions were ended.

Petitioner's assertion in this action that the federal court had taken jurisdiction of his case in 2002 is further discredited by a review of the relevant orders in then-pending cases. In Petitioner's 2002 pending actions, prior to the time of Petitioner's January 16, 2003 guilty plea in state court, the undersigned, who was the assigned United States Magistrate Judge, recommended that numerous complaints and habeas petitions filed by Petitioner be dismissed, without prejudice and without service of process, while Petitioner was a pretrial detainee.  The reports and recommendations in those cases were adopted and made the order of this Court by the Hon. C. Weston Houck, the assigned United States District Judge.  <u>See Singleton v. North Charleston Police Department, et al.</u>, C/A No. 8:02-1614-CWH-12BI (D.S.C.), Report of May 30, 2002, adopted by Order of Apr. 8, 2004 (dismissal for failure to present cognizable claim for any specific relief or remedy); <u>Singleton v. County of Charleston, et al.</u>, C/A No. 8:02-2116-12BI (D.S.C.), Report of July 9, 2002, adopted by Order of Apr. 8, 2004 (citing <u>Younger v. Harris</u>, 401 U.S. 37 (1971), noting that, absent extraordinary circumstances, federal district courts do not intervene with a State's pending criminal prosecution; further noting, under <u>Heck v. Humphrey</u>, 512 U.S. 477(1994), that a damage complaint under 42 U.S.C. § 1983 action is subject to summary dismissal

14

because a right of action with respect to the plaintiff's detention and pending criminal proceedings had not yet accrued); Singleton v. State of South Carolina, et al., C/A No. 8:02-02612 (D.S.C.) Report of Aug. 15, 2002 adopted by Order of Aug. 4, 2003 (case be dismissed and considered a "strike" citing Younger v. Harris, supra and Heck, supra, in addition to the immunities of various defendants named in the action); Singleton v. Condon; and North Charleston Police Department, C/A No. 8:02-3048-12BI (D.S.C.) Report of Oct. 1, 2002 adopted by Order of Apr. 19, 2004 (Petitioner's § 2241 habeas petition summarily dismissed without prejudice, noting that he is a pretrial detainee and that he must first exhaust his state remedies before seeking relief; also noting that Federal Speedy Trial Act is not applicable to state court proceedings); Singleton v. North Charleston Police Department, et al., C/A No. 8:02-3109-12BI (D.S.C.) Report of Oct. 1, 2002 adopted by Order of Nov. 14, 2002 (case summarily dismissed without prejudice and without issuance and service of § 1983 complaint, citing Heck and Younger, noting "absent extraordinary circumstances, federal district courts are not authorized to interfere with a State's pending criminal proceeding); Singleton v. State of South Carolina, et al., C/A No. 8:02-3916-12BI (D.S.C.) Report of Dec. 2, 2002 adopted by Order of Mar. 9, 2004 (Petitioner's § 2241 habeas petition summarily dismissed, citing Braden v. 30 Judicial Circuit, 410 th U.S. 484 (1973) noting that pre-trial detainees must exhaust state court remedies before seeking federal habeas relief and Younger; further noting that the issues raised by the Petitioner must first be considered by the Court of General Sessions for Charleston County and then, if necessary, reviewed in state appellate courts before this Court may consider it; further explaining the collateral state court proceedings which are available, and which must be exhausted if Petitioner is ultimately tried, convicted and sentenced, prior to Petitioner's filing

15

of a federal habeas action on his claims; and removing the matter from the federal court docket pending exhaustion of Petitioner's state court claims); Singleton v. North Charleston Police Department, et al., C/A No. 8:02-4057 (D.S.C.) Report of Dec. 11, 2002 adopted by Order of Apr. 19, 2004 (summary dismissal of Petitioner's § 2241 habeas action under Braden and Younger abstention doctrines and briefly describing state court remedies to be exhausted prior to a federal habeas action).[11]

Contrary to Petitioner's assertion, this Court's Reports and Orders all advised Petitioner that his requests for habeas relief in federal court were improper, and that the federal court would not intervene in his state court criminal proceedings.  Factually, there is no support for Petitioner's claim that he was under a different understanding to allow him to ignore his duties under his probationary sentence.  In addition, Petitioner's first ground ignores that, from the time of his guilty plea and sentence until April 7, 2003, he had reported to his probation agent.  Petitioner signed his probation supervision agreement on January 16, 2003, agreeing to abide by all of the conditions of probation, after his sentencing.

Petitioner's first ground was generally raised in the Anders Brief prepared by his appellate counsel Robert M. Dudek, in Petitioner's direct appeal to the South Carolina Court of Appeals from Petitioner's probation revocation proceeding.  In the Anders brief,

_____

[11] In Singleton v. Cannon, et al., C/A No. 8:02-3420 (D.S.C.), Petitioner brought a civil rights action asserting a right to a law library at the Charleston County Detention Center.  On January 14, 2003, service of the complaint was authorized upon the defendants in the matter.  The defendants filed an answer to the matter on March 11, 2003 and in June moved for summary judgment.  The matter was ultimately dismissed, based on Petitioner's lack of prosecution, on March 9, 2004.  See Order, C/A No. 02-3420, ECF No. 17.

Petitioner claimed that the probation revocation court erred by revoking the probation

without a finding that Petitioner knew he was in violation of the law by not reporting, when

Petitioner claimed that his probation had been stayed by his filing of a petition for writ of

habeas corpus in another state and federal court.  Petitioner's appeal was dismissed after

<u>Anders</u> review.

In revoking probation, the revocation judge entered an order on January 31, 2011,

finding that Petitioner had violated conditions of supervision 1, 2, 5, 7, 9, 10, as set forth

in the June 20, 2003 probation violation warrant.  ROA p. 2; ECF No. 23-5, p. 4.[12]

In his January 16, 2003 sentencing, Petitioner agreed to the following conditions:

*(1)    I shall report in person to the probation office on the day of my
       sentencing or release, and as instructed by the Department; and I
       shall make complete and truthful reports to the agent.

---

[12]  S.C. Code § 24-21-430 sets forth the following statutory conditions of
probation:

The probationer shall:
(1) refrain from the violations of any state or federal penal laws;
(2) avoid injurious or vicious habits;
(3) avoid persons or places of disreputable or harmful character;
(4) permit the probation agent to visit at his home or elsewhere;
(5) work faithfully at suitable employment as far as possible;
(6) pay a fine in one or several sums as directed by the court;
(7) perform public service work as directed by the court;
(8) submit to a urinalysis or a blood test or both upon request of the probation agent;
(9) submit to curfew restrictions;
(10) submit to house arrest which is confinement in a residence for a period of
twenty-four hours
a day, with only those exceptions as the court may expressly grant in its discretion;
(11) submit to intensive surveillance which may include surveillance by electronic
means;
(12) support his dependents; and
(13) follow the probation agent's instructions and advice regarding recreational and
social activities.

*(2)   I shall not change my residence or employment without the consent of my agent. Further, I shall allow my agent to visit me in my home, at my place of employment, or elsewhere, at any time.

(3)   I shall not use controlled substances, except when properly prescribed by a licensed physician, nor consume alcoholic beverages to excess nor enter establishments whose primary business is the sale and drinking of alcoholic beverages.  Further, I shall submit to a urinalysis or blood test when instructed by agents of the Department, and I agree that any of these test results may be used as evidence in any hearing for the violation of the conditions of my supervision.

(4)   I shall not possess or purchase any firearms, knives, or other dangerous weapons, and I shall not associate with any person who has a criminal record, or any other person whom my agent has instructed me to avoid.

*(5)   I shall work diligently at a lawful occupation. Further, I shall notify my agent if I become unemployed.

(6)   I shall not violate any Federal, State, or Local law, and I shall contact my agent if I am ever arrested or questioned by a law enforcement official for any reason whatsoever.

*(7)   I shall pay a supervision fee as determined by the Department.

(8)   I shall not leave the State without permission from my agent.  Further, if I am ever arrested in another state for violating these conditions, I hereby irrevocably waive all extradition rights I may otherwise have been entitled to and agree to return to South Carolina when directed by my agent, the court, or by a warrant.

*(9)   I shall obey all conditions of supervision set forth in this order including the payment of fines, restitution, or other payments, and the service of any period of incarceration.

*(10)   I shall follow the advice and instructions of my agent and I agree to comply with any further conditions imposed by the Department or its agents.

(11)   I agree to pay restitution and statutory collection fee payable to the Department of Probation, Parole, and Pardon Services as directed by Agents of the Department (20% collection fee charged)

State v. Singleton, C/A No. 02-GS-10-1421, Standard Conditions of Supervision, January 16, 2003; ECF No. 23-8, p. 2, 7.

In the probation violation warrant, in support of the claims of violation, the Department alleged:

Subject failed to report. Subject last reported 4-7-03.  Subject failed to refrain from leaving the state.  Per conversations with subject's uncle. Subject left

the state and is living in New York.  Subject failed to inform the agent of a new address.  Subject's uncle stated he was residing with him, meanwhile his described address was at the Stay Over Lodge on McMillan Street. Subject failed to provide employment verification.  Subject stated he was working for North Area Cab.  Per conversation with the dispatch, subject worked for two (2) weeks and then they had to recover their cab from subject. Subject failed to pay fine to COC (Clerk of Court).  Subject failed to pay his supervision fees to state. Subject failed to follow instructions of the agent. Due to subject's lack of reporting, subject has been unable to enroll and complete a sex offender treatment program.  Such actions constitute a violation of probation conditions 1,2,5,7,9, and 10 as ordered in his original probation order.

Probation Arrest Warrant, June 20, 2003; ECF No. 23-8, p. 5.  Petitioner received and

acknowledged the Department's Notice of Probation Violation Hearing and

Acknowledgment of Notice, on November 3, 2010, and again on January 7, 2011.  ECF No.

23-8, p. 3-4.[13]

At the probation revocation hearing before Judge Young, Petitioner admitted that he

wilfully violated the terms of his probation.  Supp. ROA p. 2, l. 9-11; ECF No. 23-6, p. 4.

He declared that it was an error on his behalf.  "I thought I had got a habeas corpus writ

issued.  I have paperwork of it, and I mistook."  Id.  Petitioner's counsel stated that

Petitioner had pled guilty in January 2003 and asserted that subsequently he "gained some

information where he should not have pled guilty.  He took it upon himself to file appeals

with , I think, the state and with the federal district court, and he had received some notice

---

[13]  At his revocation hearing, Petitioner raised the complaint that, while he had been arrested three times, he had not been contemporaneously served with a hard copy of a warrant.  During the proceeding, however, Petitioner admitted that he had received a copy of the probation violation warrant.  He later complained that he was not arrested and served with a "fugitive from justice" warrant, which he claimed was in violation of state law and the Fourth Amendment.  However, when he agreed to the conditions of his probationary sentence, Petitioner waived extradition upon his arrest for any violation of probation.

they were reviewing his case and he felt that was enough, that they didn't have to report again." Supp. ROA p, 5 (Probation Revocation Hearing p. 5); ECF No. 23-6, p. 6. Petitioner failed to present any credible evidence to establish that there was a reasonable basis for his claimed belief that he was no longer required to report for his state probationary sentence. The probation agent, Dave Moody, declared that Petitioner had reported for four months then absconded. Agent Moody's investigation revealed, from Petitioner's uncle, that Petitioner had moved back to New Jersey or New York. Petitioner's case was then placed in NCIC and an absconder agent took over, working with the U.S. Marshals. Mr. Moody noted that Petitioner was arrested around July 14, 2010. Agent Moody declared that the violations were that Petitioner had absconded for about 7 years and failed to attend sex offender classes due to his absconding. Supp. ROA p. 2-3; ECF No. 23-6, p. 4-5. The revocation court revoked Petitioner's probation and sentenced him to five  years. Supp. ROA p. 6; ECF No. 23-6, p. 8.

Probation revocation hearings are not a part of the criminal prosecution which results in imposition of the probationary period. Morrissey v. Brewer, 408 U.S. 471, 480, (1972). A probationer or parolee facing revocation is not entitled to the full panoply of constitutional and statutory rights due a defendant facing a criminal prosecution. Id. at 489. See also Gagnon v. Scarpelli, 411 U.S. 778, 781-82 (1973) (extending due process rights recognized in Morrissey to probationers); State v. Franks, 276 S.C. 636, 638, 281 S.E.2d 227, 228 (1981) (Although the underlying probation violations "may themselves be criminal offenses, the probation revocation proceeding is not a criminal trial of those charges…, but a more informal proceeding with respect to notice and proof of the alleged violations."). In Morrissey v. Brewer, the Supreme Court held that the conditional liberty of a parolee is a

20

liberty interest protected by the Due Process Clause of the Fourteenth Amendment. Morrisey, 408 U.S. at 480.  In Morrissey, the Court outlined the minimum due process rights to which parolees are entitled: the right to notice, limited discovery, opportunity to be present and to offer evidence, confrontation, a neutral and detached hearing body, and a written statement of the reasons for the revocation.  Morrisey, 408 U.S. at 489.  In Black v. Romano, 471 U.S. 606, 613 (1985), the Court stated: "We believe that a general requirement that the factfinder elaborate upon the reasons for a course not taken would unduly burden the revocation proceeding without significantly advancing the interests of the probationer."  See United States v. Copley, 978 F.2d 829 (4th Cir.1992) (Transcribed oral finding can serve as "written statement" of evidence and reasons for revoking supervised release under due process claim when transcript and record compiled before trial judge enables reviewing court to determine basis of trial court's decision.).          The revocation of probation for violation of a condition of probation is within the discretion of the sentencing judge.  United States v. Rifen, 634 F.2d 1142, 1144 (8th Cir.1980).  If the sentencing judge determines that the probationer has "abused the opportunity granted him not to be incarcerated," the judge may revoke the probation. Schneider v. Housewright, 668 F.2d 366, 368 (8th Cir.1981) (quoting United States v. Nagelberg, 413 F.2d 708, 709 (2d Cir.1969), cert. denied, 396 U.S. 1010 (1970)).  In making this determination the state must present enough evidence "'to satisfy the [sentencing] judge that the conduct of the probationer has not met the conditions of the probation'" United States v. Strada, 503 F.2d 1081, 1085 (8th Cir.1974) (quoting United States v. Garza, 484 F.2d 88, 89 (5th Cir.1973)); Ewing v. Wyrick, 535 S.W.2d 442, 444 (Mo.1976).  This is a far less stringent test than the reasonable doubt standard used in criminal trials.

21

Petitioner has not shown that the determination to revoke his probation was contrary to - or an unreasonable application of - clearly established federal law, nor has Petitioner shown that the state court adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.  See 28 U.S.C. § 2254(d).  Furthermore, by failing to challenge the other violations of his probation, Petitioner has not established any prejudice.  See Buckley v. Terhune, 441 F.3d 688, 697 (9th Cir.2006) (explaining that under AEDPA, habeas relief may be denied when petitioner fails to show prejudice).

The record shows that the state court judge had a sound basis for revoking the probation of Petitioner. Although Petitioner claims that he misunderstood the effect that his filing of numerous pleadings in federal court had on his state court probation supervision, he has failed to present any evidence to support his alleged misunderstanding.  The state revocation judge had a simple fact to resolve, *i.e.* whether Petitioner had absconded for 7 years without advising his agent of his change of address, work, or participation in the ordered sex offender program, among other matters.   The state court reasonably concluded that Petitioner violated probation conditions 1, 2, 5, 5, 9, and 10.  These findings carry a presumption of correctness under 28 U.S.C. § 2254(d).  Petitioner has failed to show that the findings are clearly erroneous.  Habeas relief should be denied.

### *Second, Third, and Fourth Grounds*

Petitioner's additional grounds are that he is an innocent victim of a ten year conspiracy in violation of his civil rights, that state court judges have "alienated the Petitioner of his rights," (Petition, ECF No. 1, p. 8), and that "[t]he separation of powers

22

have united in S.C. to hold the actually innocent Petitioner, victim of irreparable injury, guilty though DNA proved his innocence." Petition, ECF No. 1, p. 10. Petitioner claims that his original arrest in 2001 and his ultimate conviction by negotiated guilty plea in 2003 were events in a series of constitutional violations. Petitioner insists that there was DNA evidence that exonerates him.[14] These grounds assert, in essence, another challenge to Petitioner's original 2003 conviction, which challenge is barred from consideration by this Court, pursuant to 28 U.S.C. § 2244(b)(1). This Court recently denied habeas relief to Petitioner in his challenge to his 2003 conviction in Singleton v. Warden, C/A No. 2:11-1034-TLW-BHH (D.S.C.), Order of Aug. 25, 2011 (ECF No. 23), Text Order of Sept. 23, 2011 (ECF No. 31), appeal dismissed Feb. 3, 2012 (ECF No. 33). Petitioner has not been granted authorization to file a second or successive petition challenging his 2003 conviction by the Fourth Circuit. Therefore this Court lacks jurisdiction to hear such a claim.

In his third allegation, the Petitioner claims that he has appeared three times before state court judges who were biased against him. He cites to the probation revocation appeal Anders brief, p. 5. However, a review of that document reveals no claim of biased judges, nor was there any motion to recuse Judge Young, which was necessary to have preserved the issue in an appeal. To the extent that Petitioner is challenging his state court revocation judge, the matter is procedurally barred because it was not properly raised in

---

[14] Respondent attached a redacted copy of the August 4, 2002 DNA Parentage Report to his Return. ECF No. 23-9. Contrary to Petitioner's claim, this DNA report shows that Petitioner was not excluded as the father of the child of the victim upon whom Petitioner committed a lewd act. The report shows that Petitioner's probability of parentage of the victim's child is 99.999999995%. Petitioner alleged no other DNA test results, and the Court is unaware of any other DNA report.

state court in a timely fashion.  To the extent that Petitioner is challenging his 2003 judge, the matter is barred, as noted above, under the second/successive petition rule and statute of limitations, as with ground two.

In his fourth allegation, Petitioner claims false imprisonment and abduction by the United States Marshal's service upon his arrest for a probation violation.  This issue was not raised before the revocation judge.  In any event, it is not a ground for federal habeas relief.  The gravamen of Petitioner's complaint is that he was returned to South Carolina in violation of state and federal law, ignoring established extradition procedures, and was, effectively, kidnapped and falsely imprisoned.  Such allegations, if proven, would not invalidate Petitioner's incarceration in South Carolina.  To the contrary, "[t]here is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will."  Frisbie v. Collins, 342 U.S. 519, 522 (1952).  "An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction."  United States v. Crews, 445 U.S. 463, 474 (1980) (citing Gerstein v. Pugh, 420 U.S. 103, 119 (1975); Frisbie, 342 U.S. at 522; Ker v. Illinois, 119 U.S. 436, 443-44 (1886)).  Nor is an allegedly invalid extradition a sufficient ground upon which to grant habeas relief, once the fugitive is present in the jurisdiction from which he fled.  See Hudson v. Moran, 760 F.2d 1027, 1029 (9th Cir.1985); Siegel v. Edwards, 566 F.2d 958, 960 (5th Cir.1978) (per curiam).

Further, the undersigned notes that Petitioner signed a waiver of extradition when he signed the "Standard Conditions of Probation," in condition 8, on January 16, 2003.  This waiver allowed for Petitioner's extradition upon arrest.  Further, Petitioner - at least at the time of the revocation hearing - admitted that he was mistaken in leaving the state and his

24

supervision.  Additionally, Petitioner's previous civil rights lawsuits concerning his allegedly unlawful arrest, extradition, prosecution, and confinement in connection with his probation violation, have been summarily dismissed, without prejudice and without issuance and service of process, by this Court.  See Singleton v. 10 Unidentified U.S. Marshals et al., C/A No. 8:11-1811-TLW-JDA (D.S.C.), Order (ECF No. 19); Singleton v. United States, et al., C/A No. 8:11-1198-TMC-JDA (D.S.C.), Order (ECF No. 41) affirmed on appeal ECF No. 48; Singleton v. McMaster, et al., C/A No. 8:10-2323-TLW-BHH (D.S.C.), Order (ECF No. 22).  In Singleton v. State of South Carolina, et al., C/A No. 8:10-2548-TLW-BHH, Petitioner filed a § 2241 habeas petition seeking to challenge both his 2003 conviction and his 2010 detention, pending his probation revocation hearing; that action was dismissed without prejudice and without requiring the respondents to file a return or answer.

Petitioner's previous § 2254 habeas petition challenging his 2003 conviction, in C/A No. 11-1034, was dismissed with prejudice.  As noted above, Petitioner is barred from challenging his 2003 conviction in this Court absent preauthorization from the Fourth Circuit.  In any event, Petitioner's claim would be barred by the AEDPA's statute of limitations, in 28 U.S.C. § 2244(d)(1).

To the extent that Petitioner's allegation that he is actually innocent presumably constitutes an argument that this Court's failure to consider his claims will result in a fundamental miscarriage of justice, Petitioner fails to present a credible claim.  See Coleman v. Thompson, 501 U.S. 722, 750 (1991).  Cognizable  claims of "actual innocence" are extremely rare and must be based on "factual innocence not mere legal insufficiency."  Bousley v. United States, 523 U.S. 614, 623 (1998).  Petitioner has failed to present any new, reliable evidence of any type that was not presented in his prior court

25

proceedings which supports his innocence on the probation violation charge for which he was convicted and sentenced. See Schlup v. Delo, 513 U.S. 298, 324 (1995) (to present a credible claim of actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial."). Rather, Petitioner simply contends there was lack of evidence to support his 2003 conviction and his 2011 probation revocation. Further, as noted above, Petitioner has failed to make any showing that a fundamental miscarriage of justice will occur if this claim is not considered. Murray v. Carrier, 477 U.S. 478 (1986); Rodriguez v. Young, 906 F.2d 1153, 1159 (7th Cir. 1990) (a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent")(citing Murray, 477 U.S. at 496). Therefore, Petitioner's claims in grounds two, three, and four are barred from consideration by this Court, and should be dismissed.

In his Response in Opposition to Respondent's Motion for Summary Judgment, the focus of Petitioner's argument shifts entirely from an attack on the legality of Petitioner's January 31, 2011 probation revocation and/or his January 16, 2003 guilty plea, to an attack on the execution of his sentence. Petitioner claims that, following his probation revocation, SCDC failed to properly credit him with the 457 days that he spent in custody between the time of his arrest for violation of probation and his revocation hearing. See Response in Opposition to Respondent's Motion for Summary Judgment, ECF No. 31. Under Rule 2 of the Rules Governing Section 2254 cases in the United States District Courts, "a petitioner who seeks relief from judgments of more than one state court must file a

26

separate petition covering the judgment or judgments of each court." To the extent that Petitioner seeks to challenge the decision of the South Carolina Administrative Law Court denying his claim and determining that SCDC properly awarded him credit for the 457 days that he spent in jail after he was served with the probation violation arrest warrant, prior to his revocation hearing, such claim cannot be considered in the instant Petition. Furthermore, even if Petitioner had brought this challenge in a separate habeas petition, Petitioner's probation revocation sentence has fully expired, Petitioner has been released from SCDC, and Petitioner is no longer "in custody" on the probation revocation sentence, so Petitioner's sentence execution claim is moot.

Finally, with respect to Petitioner's Motion for Summary Judgment, he asserts that his due process right was violated because "[his] imprisonment [was] grossly disproportionate for 7 year ago probation violations and stripping Petitioner of 506 days earned jail time credits." Petitioner's Motion for Summary Judgment, ECF No. 32, p. 1. Petitioner argues that his probation "revocation [was] improper because [the] government failed to offer evidence at [the] hearing." Id. Much of Petitioner's argument in his Summary Judgment Motion is directed to the alleged unlawfulness of his original conviction following his guilty plea in 2003, and the allegedly unlawful circumstances of his apprehension and return to the State of South Carolina in 2010, none of which is relevant to the instant habeas proceeding.

For example, Petitioner asserts that the sentencing "court of G.S. 1-16-03 was without jurisdiction to accept guilty plea." Petitioner's Motion for Summary Judgment, ECF No. 32, p. 2. Petitioner reiterates his argument that his numerous federal court filings resulted in "[the] federal court having assumed federal question jurisdiction over Petitioner

27

[in] 12-2002," therefore such federal court litigation "must stay the execution of a state court's judgments," because "federal review had attached [in] 2002 upon a meritorious pre-trial showing of this state's refusal to then grant the Petitioner his federally protective rights." Id.  Petitioner alleges a new ground that was not previously raised in the instant § 2254 Petition, or in his direct appeal, *i.e.* that Petitioner's "5th Amendment [right was] violated where probationer [was] compelled to self incriminate in response to questioning under threat of revocation."  Petitioner's Motion for Summary Judgment, ECF No. 32, p. 3. However, this argument is barred as it was not raised in state court.  Petitioner alleges that "fundamental fairness [was] violated because probation revoked for 7 year ago failures and nothing in the verbatim record indicated that Petitioner had engaged in any antisocial conduct," and "probation improper where record failed to indicate why termination insufficient alternative to imprisonment." Id.  Petitioner again alleges that  he has been the victim of a conspiracy to violate his rights by law enforcement agencies and the courts, "in this case the evidence as a whole establishes beyond a reasonable doubt that a conspiracy exists, all conspirators know of it and are voluntarily participating in it . . . to imprison the low class Petitioner in which all acted as conduits to the accomplished malicious prosecution's creative, intermittent force." Petitioner's Motion for Summary Judgment, ECF No. 32, p. 4.  Petitioner attaches to his Motion a copy of the transcript of his probation revocation hearing and his Anders brief filed in South Carolina Court of Appeals.  For the reasons enumerated above, Petitioner's Motion for Summary Judgment should be denied.

## VI. CONCLUSION

Wherefore, it is RECOMMENDED that the Court DISMISS this action, sua sponte, based on Petitioner's unconditional release from SCDC custody on April 1, 2013, which

renders his Petition moot and deprives the Court of jurisdiction to consider his claims for

habeas relief. In the alternative, Respondent's Motion for Summary Judgment  (ECF No.

24) should be GRANTED, Petitioner's Motion for Summary Judgment (ECF No.32) should

be DENIED,  and Petitioner's § 2254 Petition should be DISMISSED WITH PREJUDICE.

It is further RECOMMENDED that a certificate of appealability be DENIED.[15]


                                                    s/Bruce H. Hendricks
July 25, 2013                                       United States Magistrate Judge
Charleston, South Carolina

**The parties' attention is directed to the important NOTICE on the next page.**

---

[15]     Title 28, Section 2253 provides in relevant part,
(c)(1) Unless a circuit justice or judge issues a certificate of appealability,
an appeal may not be taken to the court of appeals from–
(A) the final order in a habeas corpus proceeding in which the detention
complained of arises out of process issued by a State court; or
(B) the final order in a proceeding under section 2255.
28 U.S.C. § 2253. A prisoner satisfies this standard by demonstrating that reasonable
jurists would find this court's assessment of his constitutional claims debatable or wrong
and that any dispositive procedural ruling by the district court is likewise debatable. See
Miller-El v. Cockrell, 537 U.S. 322, 336 (2003); Slack v. McDaniel, 529 U.S. 473, 484
(2000); Rose v. Lee, 252 F.3d 676, 683 (4th Cir. 2001). In the case *sub judice*, the legal
standard for a certificate of appealability has not been met. The undersigned therefore
recommends that a certificate of appealability be denied.

29

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).